# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAPANESE AMERICAN CITIZENS LEAGUE, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> ELON MUSK, *in his official capacity*, et al.; <br><br> *Defendants*. | Case No. 1:25-cv-00643-TSC |

## PLAINTIFFS' FIRST SET OF WRITTEN DISCOVERY AND DEPOSITION TOPICS

Pursuant to Rules 26(b), 33, and 34 of the Federal Rules of Civil Procedure, Plaintiffs serve this First Set of Requests for Production and Interrogatories on Defendants to be answered fully, in writing, and under oath within seven (7) days from the date of service thereof following the Court's order granting Plaintiffs' Emergency Motion for Expedited Discovery.

Pursuant to Rules 26(b), 30(b)(6), and 30, Plaintiffs hereby give notice of the matters for examination for the depositions of Defendants U.S. DOGE Service, Elon Musk, and the Office of Personnel Management.

Each Request for Production and Interrogatory and, where indicated, description of deposition topics, is subject to the definitions and instructions provided below:

### DEFINITIONS

1. "You," "Your," or "Defendant" means all Defendants, and any of their past and present agents, advisors, employees, representatives, attorneys, consultants, contractors, or other persons or entities acting on their behalf or subject to their control.

1

2. "Document" is used in the broadest possible sense to include any thing which may be within the meaning of Rule 34 of the Federal Rules of Civil Procedure and the phrase "writings and recordings" as defined in Federal Rule of Evidence 1001, including without limitation any handwritten, printed, typed, photocopied, photographed, recorded or otherwise physically or electronically reproduced or stored communication or representation, whether composed of letters, words, numbers, data, pictures, sounds or symbols, or any combination thereof. "Document" includes "Electronically Stored Information" as defined below.

3. "Electronically Stored Information" or "ESI" includes, but is not limited to, any and all electronic data or information that is stored on or can only be read through the use of a computing device. This term includes, without limitation, databases; text file and word processing documents (including metadata); presentation documents; spreadsheets; graphics, animations, and images (including, but not limited to, JPG, JPEG, GIF, BMP, PDF, PPT, and TIFF files); email, email strings (including attachments, logs of email history and usage, header information and "deleted" files), and email attachments; instant messages (including attachments), messages on text messaging platforms (including but not limited to Signal, iMessage, WhatsApp, Microsoft Teams, and X, and including attachments); calendar and scheduling information (including attachments); cache memory; Internet history files and preferences; audio, video, audiovisual recordings, and voicemail; stored on databases, networks, computers and computer systems, computer system activity logs, servers, archives, back-up or disaster recovery systems, hard drives, discs, CDs, diskettes, removable drives, tapes, cartridges and other storage media, printers, scanners, personal digital assistants, computer calendars, handheld wireless devices,

cellular telephones, pagers, fax machines, and voicemail systems. This term includes but is not limited to onscreen information, system data, archival data, legacy data, residual data, and metadata that may not be readily viewable or accessible, and all file fragments and backup files.

4. The terms "communication" or "correspondence" are used in the broadest sense to mean every conceivable manner or means of disclosure, transfer, or exchange of oral or written information between one or more persons, entities, devices, platforms, or systems. This includes transmission of information by oral, graphic, written, pictorial, electronic, or other perceptible means, including later memorializing of such transmission in a Document, including e-mail, text messages, social media, professional or social networking websites, memoranda of conversations, pictures, or recordings.

5. The terms "concerning," "reflecting," "regarding," and "relating to" are used in the broadest possible sense and mean, in whole or in part, addressing, affecting, analyzing, constituting, containing, commenting, in connection with, dealing with, discussing, describing, embodying, evidencing, identifying, pertaining to, referring to, reporting, stating, or summarizing.

6. "Musk" means Defendant Elon Musk, in his official capacity as an employee and/or volunteer for the United States government.

7. "Gleason" means Defendant Amy Gleason, in her official capacity as an employee and/or volunteer for the United States government.

8. "DOGE" means Defendant the United States Department of Government Efficiency Service, established by Executive Order 14158, "Establishing and Implementing the President's 'Department of Government Efficiency,'" on January 20, 2025. "DOGE"

3

includes the "U.S. DOGE Service Temporary Organization," "established within USDS" by Executive Order 14158.

9. "DOGE Team" is defined pursuant to section 3(c) of Executive Order 14158, "Establishing and Implementing the President's 'Department of Government Efficiency,'" dated January 20, 2025.

10. "DOGE Personnel" means all persons acting on behalf of, as a part of, or pursuant to the authority of DOGE, including the U.S. DOGE Service Temporary Organization and DOGE Teams.  This includes but is not limited to federal employees, special government employees, contractors, consultants, detailed federal employees, and volunteers. "DOGE Personnel" specifically includes Defendants Elon Musk and Amy Gleason.

11. "OPM" means Defendant Office of Personnel Management including its employees, officers, agents, and volunteers.

12. "Department of Education" means Defendant United States Department of Education including its employees, officers, agents, and volunteers.

13. "NPS" means Defendant National Park Service including its employees, officers, agents, and volunteers.

14. "USFS" means Defendant United States Forest Service including its employees, officers, agents, and volunteers.

15. "BLM" means Defendant Bureau of Land Management including its employees, officers, agents, and volunteers.

16. "NOAA" means Defendant National Oceanic and Atmospheric Administration including its employees, officers, agents, and volunteers.

17. "Department of Commerce" means Defendant United States Department of Commerce including its employees, officers, agents, and volunteers.

18. "Department of the Interior" means Defendant United States Department of the Interior including its employees, officers, agents, and volunteers.

19. "HHS" means Defendant United States Department of Health and Human Services including its employees, officers, agents, and volunteers.

20. "NIH" means Defendant National Institutes of Health including its employees, officers, agents, and volunteers.

21. "SAMHSA" means Defendant Substance Abuse and Mental Health Services Administration including its employees, officers, agents, and volunteers.

22. "EPA" means Defendant United States Environmental Protection Agency including its employees, officers, agents, and volunteers.

23. "NSF" means Defendant National Science Foundation including its employees, officers, agents, and volunteers.

24. "USDA" means Defendant United States Department of Agriculture including its employees, officers, agents, and volunteers.

25. "FEMA" means Defendant Federal Emergency Management Agency including its employees, officers, agents, and volunteers.

26. "HUD" means Defendant United States Department of Housing and Urban Development including its employees, officers, agents, and volunteers.

27. "Employing Agencies" includes OPM, Department of Education, NPS, USFS, BLM, NOAA, NIH, NSF, and SAMHSA and their respective officers and employees.

28. "Granting Agencies" includes Department of Education, NOAA, HHS, NIH, SAMHSA, EPA, NSF, USDA, FEMA, and HUD, and their respective officers and employees.

29. "Fork in the Road Email" means the email sent on January 28, 2025, by OPM to over two million federal employees described in paragraphs 182 – 184 of the Complaint in this case.

30. "Agency Head" means the chief officer of a federal department or agency, acting or otherwise.

## INSTRUCTIONS

1. Each word, term, or phrase used in these discovery requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Civil Rules of the U.S. District Court for the District of Columbia.

2. The terms "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Requests for Production, Interrogatories, and deposition topics all responses that might otherwise be construed to be outside its scope.

3. You must respond to each Request and Interrogatory herein after due investigation and on the basis of any and all information that is in Your possession, custody or control, or in the possession, custody or control of any Person acting on Your behalf—including Your employees, agents, attorneys, advisors, consultants, or other Persons—or that reasonably may be available to You or any such Person.

4. In responding to these Requests and Interrogatories, transcribe each request or subpart and, after each, provide its answer. Plaintiffs will provide an editable version of these requests upon reasonable request.

5. If, in lieu of or in addition to answering a Request or Interrogatory, you produce a database and other data or reports, that material should be produced in a native format (such as a

Microsoft Excel file or tab-delineated text file) that can be processed and/or sorted using standard spreadsheet or database software including Microsoft Access and Microsoft Excel.

6. The term "identity" or "identify," when used with respect to a natural person, requests the name of the person, present or last known address, telephone number and email address(es) of the person and the name and present or last known address of the person's employer, as well as any other information specified. When used with respect to an entity other than a natural person, it requests the name, business address, and telephone number of the entity, as well as any other information specified.

7. "Identify" used in reference to data means to state the medium (i.e. computer data base, document or other recording), the year(s) for which the data was stored, the location where the data is kept, and the full name and title of the person most knowledgeable about the way the medium is stored and/or maintained.

8. If You claim that You cannot respond in full to any Request or Interrogatory herein, indicate with specificity the portion to which You claim that You cannot respond, explain why You cannot respond to that portion, and respond in full to the remainder.

9. If You object on one or more grounds to any portion of any Request or Interrogatory herein, indicate with specificity the portion to which Your objection applies, explain the nature and basis of each such objection, and respond in full to the remainder.

10. If You claim that any Request or Interrogatory herein is vague, ambiguous, or overbroad in any respect, indicate with specificity what You find to be vague, ambiguous, or overbroad, and why; explain the construction that You have used in answering the Request or Interrogatory; and respond to the Request or Interrogatory in full to the best of Your ability.

11. If any Request or Interrogatory herein does not specifically request particular information but the provision of such information is necessary to make a response to that Request or Interrogatory comprehensible, complete, or not misleading, construe the Request or Interrogatory in question to require the provision of that information and explain that You have done so.

12. If You contend that any part of a response to any Request or Interrogatory is protected from disclosure by any legal privilege or exemption from disclosure, identify the nature of each privilege or exemption claimed; identify the name of the document, ESI, or thing; the date, author(s), recipient(s), and basic subject matter of the allegedly privileged or exempt information and the nature of the privilege asserted in sufficient detail to allow the validity of the claim to be assessed; and provide all responsive information that is not reasonably and legitimately subject to the claimed privilege or exemption.

13. Unless otherwise specified, the relevant time period for these Requests and Interrogatories is January 20, 2025, to April 11, 2025.

14. These Requests and Interrogatories are continuing in nature, and You must promptly revise or supplement Your responses if and as new or additional responsive information becomes known.

## REQUESTS FOR PRODUCTION

1. Produce all documents produced in response to Plaintiff States' First Set of Written Discovery in *New Mexico v. Musk*, No. 1:25-cv-429 (D.D.C. filed February 13, 2025) including copies of Defendants' answers to all requests for production, interrogatories, and requests for admission, including objections, as well as any exhibits, attachments, logs, files, or other things produced in response to Plaintiff States' requests in that case, as well

as any deposition transcripts produced, should the Court grant the Plaintiff States' motion for expedited discovery in that case in whole or in part. Should Plaintiff States' motion in that case be denied, those requests are incorporated herein and should be responded to in full.

2. Produce all planning, implementation, and operational documents concerning Agency Heads' "coordinat[ion] and consult[ation] with DOGE to shrink the size of the federal workforce and limit hiring to essential positions."[1]

3. Produce all directives, instructions, and other communications (including attachments thereto) between DOGE Personnel and the Employing Agencies, directing, causing, or otherwise relating to the reduction in size of the federal workforce, including: the termination of employees regardless of whether such terminations have occurred or are expected to occur in the future; withdrawal of offers of employment; and elimination of positions that had not been filled

4. Produce all directives, instructions, and other communications (including any attachments thereto) between DOGE Personnel and the Granting Agencies regarding federal grants, contracts, and any other obligated spending that DOGE or DOGE Personnel cancelled, terminated, directed to be cancelled or terminated, caused to be cancelled or terminated, or recommended to be cancelled or terminated, that was to be spent by or through the Granting Agencies, regardless of whether such terminations have occurred or are expected to occur in the future.

---

[1] The White House, *Fact Sheet: President Donald J. Trump Works to Remake America's Federal Workforce* (Feb. 11, 2025), https://www.whitehouse.gov/fact-sheets/2025/02/fact-sheet-president-donald-j-trump-works-to-remake-americas-federal-workforce/.

9

5. Produce any directives, instructions, and other communications to agency personnel requiring expenses of any sort to be submitted to DOGE or any DOGE Personnel for approval, including approval for expenses on or use of credit cards held by federal agencies or federal agency employees.

6. Produce all directives, instructions, and other communications between DOGE Personnel and any other federal employee, officer, contractor, or volunteer regarding the Department of Education not produced in response to Interrogatories 3 and 4, excepting those communications pertaining solely to updating Department of Education technology.

## INTERROGATORIES

1. For each federal department or agency named in this litigation—Department of Education, NPS, USFS, BLM, NOAA, Department of Commerce, Department of Interior, HHS, NIH, SAMHSA, EPA, NSF, USDA, FEMA, and HUD—identify the number of probationary employees whose employment has been terminated since February 11, 2025.

    a. For NPS, identify the number of probationary employees, sorted by job title or description, terminated at each NPS-administered location, unit, or property owned, administered, managed, operated, or otherwise under the supervision of NPS.

    b. For USFS, identify the number of probationary employees, sorted by job title or description, terminated at each location, unit, or property owned, administered, managed, operated, or otherwise under the supervision of USFS.

    c. For BLM, identify the number of probationary employees, sorted by job title or description, terminated at each location, unit, or property owned, administered, managed, operated, or otherwise under the supervision (in whole or in part) of BLM:.

    d. For NOAA, identify the number of probationary employees, sorted by job title or description, terminated at each NOAA office, including but not limited to each National Weather Service office.

2. For each federal department or agency named in this litigation—Department of Education, NPS, USFS, BLM, NOAA, Department of Commerce, Department of Interior, HHS, NIH, SAMHSA, EPA, NSF, USDA, FEMA, and HUD—identify the number of employees, sorted by job title or description and duty station, not included in your response to Interrogatory 1, whose employment has been terminated since January 20, 2025, at the direction or recommendation or with any other involvement in the decisional process by DOGE Personnel and/or Mr. Musk.

    a. For NPS, identify the number of employees terminated at each NPS-administered location or property owned, managed, operated or otherwise under the supervision of NPS, at the direction or recommendation or with any other involvement in the decisional process by DOGE Personnel:

        i. The number of employees whose employment was terminated;

        ii. The number of withdrawn offers of employment; and

        iii. The number of unfilled, eliminated positions.

    b. For USFS, identify at each location or property owned, managed, operated or otherwise under the supervision of USFS at the direction or recommendation or with any other involvement in the decisional process by DOGE Personnel:

        i. The number of employees whose employment was terminated;

        ii. The number of withdrawn offers of employment; and

        iii. The number of unfilled, eliminated positions.

    c. For BLM, identify at each location or property owned, managed, operated or otherwise under the supervision of BLM at the direction or recommendation or with any other involvement in the decisional process by DOGE Personnel:

        i. The number of employees whose employment was terminated;

        ii. The number of withdrawn offers of employment; and

        iii. The number of unfilled, eliminated positions.

    d. For the National Oceanic and Atmospheric Administration, identify at each National Weather Service office and at each other office throughout NOAA, at the direction or recommendation or with any other involvement in the decisional process by DOGE Personnel:

        i. The number of employees whose employment was terminated;

        ii. The number of withdrawn offers of employment; and

        iii. The number of unfilled, eliminated positions.

3. Identify all federal grants, contracts, and any other obligated or appropriated spending that Defendants Musk or DOGE cancelled, terminated, delayed, or directed or caused to be cancelled, terminated, or delayed, that was to be spent by or through the Granting Agencies, including amount, grantee/principal investigator, reason for termination, and date of termination.

4. For each of the Employing Agencies, identify the number of federal employees sorted by job title and duty station who accepted the offer described in the Fork in the Road Email.

5. Identify all time-entry reservations, other entrance reservations, parking lot reservations, or campground reservations cancelled for any reason at any NPS, USFS, or BLM site since February 13, 2025.

6. Identify, or provide a summary of, any rejections or failures to approve credit card expenses for agencies or agency employees, by Defendant Musk and/or by DOGE Personnel.

7. Identify, or provide a summary of, any purported budgetary savings, resulting from the following:

    a. The termination of employees regardless of whether such terminations have occurred or are expected to occur in the future; withdrawal of offers of employment; and elimination of positions that had not been filled at the direction or recommendation or with any other involvement in the decisional process by DOGE Personnel.

    b. Cuts to grants, contracts, and other appropriated spending cancelled, terminated, delayed or directed or caused to be cancelled, terminated, or delayed by DOGE Personnel.

## PLAINTIFFS' 30(B)(6) DEPOSITION TOPICS

**Representative of Defendant U.S. DOGE Service**

1. Activities of Mr. Musk and DOGE Personnel between January 20, 2025, and the date of the deposition regarding:

    a. Reducing the size of the federal workforce, including terminations of employees at federal departments and agencies;

    b. Eliminating, dismantling, or reducing the size of federal departments and agencies;

    c. Termination, cancellation, suspension, or review of federal grants, contracts, or other obligated spending by federal departments and agencies;

    d. Freezing and denial of spending on credit cards held by federal departments and agencies and employees of federal departments and agencies; and

2. Responsibilities and authority of DOGE personnel between January 20, 2025, and the date of the deposition.

**Defendant Elon Musk**

1. Activities of Mr. Musk and DOGE Personnel between January 20, 2025, and the date of the deposition regarding:

    a. Reducing the size of the federal workforce, including terminations of staff at federal departments and agencies;

    b. Eliminating, dismantling, or reducing the size of federal departments and agencies; and

    c. Termination, cancellation, suspension, or review of federal grants, contracts, or other obligated spending by federal departments and agencies; and

    d. Freezing and denial of spending on credit cards held by federal departments and agencies or employees of federal departments and agencies.

2. Responsibilities, authority, and identities of Mr. DOGE personnel between January 20, 2025, and the date of the deposition.

3. Mr. Musk's government role and authority within DOGE and outside of DOGE, including Mr. Musk's reports of his own and DOGE's activities to other government officials; and

4. Other government officials' authority over Mr. Musk.

**Representative of Defendant Office of Personnel Management**

1. Communications with and activities involving DOGE personnel regarding:

a. Reduction in size of the federal workforce, including planned and effectuated terminations of federal employees and reductions in force (RIF), between January 20, 2025 and the date of the deposition;

b. Any program purporting to offer deferred resignation announced and/or implemented from January 20, 2025, to the date of the deposition;

c. Changes to practice or policy regarding management or obligations of federal employees from January 20, 2025, to the date of the deposition; and

d. Changes to practice or policy regarding hiring or termination of federal employees from January 20, 2025, to the date of the deposition.