**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JAPANESE AMERICAN CITIZENS LEAGUE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ELON MUSK, in his official capacity, *et al.*,<br><br>Defendants. | Civil Docket No. 1:25-cv-00643-TSC |

**DEFENDANTS' OPPOSITION
TO PLAINTIFFS' EXPEDITED MOTION FOR EXPEDITED DISCOVERY**

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................................1

ARGUMENT.......................................................................................................................2

I.    PLAINTIFFS' REQUEST FOR DISCOVERY IS PREMATURE............................2

II.   ORDERING DISCOVERY OF THE WHITE HOUSE IS AN
      EXTRAORDINARY MEASURE................................................................................8

III.  PLAINTIFFS' REQUEST IS OVERBROAD AND BURDENSOME....................9

IV.   PLAINTIFFS' REQUEST TO DEPOSE ELON MUSK SHOULD BE DENIED ..........17

V.    PLAINTIFFS' APA CLAIM FURTHER UNDERMINES THEIR REQUEST
      FOR EXPEDITED DISCOVERY............................................................................20

VI.   IF THIS COURT ORDERS EXPEDITED DISCOVERY, SUCH DISCOVERY
      SHOULD BE WHOLLY LIMITED TO THE DISCOVERY GRANTED TO
      THE *NEW MEXICO* PLAINTIFFS...........................................................................23

VII.  IF THIS COURT ORDERS EXPEDITED DISCOVERY, DEFENDANTS
      REQUEST A STAY OF THAT ORDER. ................................................................23

CONCLUSION....................................................................................................................23

## INTRODUCTION

Plaintiffs' discovery motion is sprawling: It demands emails between the White House and at least 15 federal agencies (including for a period that extends into the future); scores of interrogatories; and even the deposition of a Senior Advisor to the President. And it does so all before any proceedings have occurred in this case outside of the filing of the Complaint. The scope and nature of these requests is extraordinary. And they are nothing but a quintessential fishing expedition, intended to find something—anything—to shore up the obvious defects in Plaintiffs' Complaint.

This Court should deny the motion.

*First*, Plaintiffs' requested discovery is premature. The Complaint's allegations regarding standing are exceedingly thin; here in particular, Defendants should not be subjected to the burdens of discovery before their forthcoming motion to dismiss is decided. That is especially so, because Plaintiffs have not made *any* showing of a specific, narrow need for immediate discovery.

*Second*, Plaintiffs do not meet the extremely high standard federal courts require before ordering discovery into the White House, having failed to demonstrate a real need for such material and make a clear effort at strictly limiting any request.

*Third*, the requested discovery is overbroad, unduly burdensome and wholly untailored to the purpose of expedited discovery in this posture. Instead, Plaintiffs request the full scope of merits discovery (and more) that would in the ordinary course require months to complete.

*Fourth*, Plaintiffs seek a deposition of Mr. Musk, a Senior Advisor to the President—the type of high-level government official who should not be deposed absent the showing that his testimony

is required to obtain essential information that cannot be obtained in any other way. Plaintiffs have not even attempted to meet this showing. Nor could they.[1]

## ARGUMENT

Expedited discovery is not the norm. *See Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97 (D.D.C. 2014). All the more so where that discovery reaches into the inner workings of a separate branch of government—and more still when it reaches the White House itself. *See Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 388 (2004). The upshot is that to justify such an extraordinary measure, a plaintiff must—at bare minimum—demonstrate a real and legitimate need for the material sought and make an effort to closely tailor any request accordingly. On both fronts, Plaintiffs have not come close to doing so here.

Indeed, Plaintiffs' requested discovery lacks all the limitations that the Court identified as important in ordering discovery in *New Mexico*. Among other things, Plaintiffs seek the deposition of a Senior Advisor to the President, Elon Musk. Under the well-established "apex doctrine," such requests are rarely ever justified, and such discovery is only permissible on the extraordinary showing that the requests are limited to personal knowledge that cannot otherwise be obtained. *See, e.g.*, *Simplex Time Recorder Co. v. Sec'y of Lab.*, 766 F.2d 575, 586 (D.C. Cir. 1985). Such requests are especially inappropriate for early discovery, and Plaintiffs do not and cannot make the required showing here.

## I.  PLAINTIFFS' REQUEST FOR DISCOVERY IS PREMATURE.

Before turning to its content, Plaintiffs' motion is premature for two reasons. First,

---

[1] Defendants respectfully disagree with the Court's Memorandum Opinion and Order of March 12, 2025, authorizing expedited discovery in the related case of *New Mexico v. Musk* ("*New Mexico*"), 1:25-cv-429 (D.D.C.), ECF Nos. 60 and 61, and have sought a petition for a writ of mandamus and an emergency motion for a stay with respect to that Order. Given Plaintiffs seek all discovery sought by the *New Mexico* plaintiffs (ECF 11-1, at 8–9 (RFP No.1)), Defendants incorporate all arguments they made opposing discovery requested in that case herein. *See* Defs.' Opp'n to Pls.' Mot. for Expedited Discovery, *New Mexico,* ECF No. 48. Relatedly, Defendants respectfully request that—at minimum— this Court refrain from ruling on Plaintiffs' motion until any mandamus proceedings have concluded regarding the *New Mexico* Order.

Defendants should not be put to the burden of discovery before Plaintiffs' allegations of standing—and this Court's jurisdiction—can be tested by a motion to dismiss. Second, in the absence of any preliminary injunction motion—or even a request for a TRO—Plaintiffs cannot and do not meet their burden of demonstrating that their requested discovery is narrowly tailored to a specific issue necessary to resolve their anticipated motion for preliminary injunction.

1. Courts typically wait to order discovery until resolving any motions to dismiss. *See, e.g., Attkisson v. Holder*, 113 F. Supp. 3d 156, 165 (D.D.C. 2015); *True the Vote, Inc. v. IRS*, Civ. A. No. 13-734 (RBW), 2014 WL 4347197, at *8 (D.D.C. Aug. 7, 2014); *In re Quinteros*, No. Civ. A. Nos. 2884 (ABJ), 19-2997 (ABJ), 2021 WL 3674727, at *13 (D.D.C. Aug. 13, 2021). Rightly so: A party should not be able to engage in intrusive discovery to prove up a complaint that suffers from fatal defects if taken as true. *See Guttenberg*, 26 F. Supp. 3d at 99 ("[I]f the Court were to grant plaintiffs' discovery motion, and then grant defendants' motion to dismiss for failure to state a claim, defendants would have been forced to expend significant resources responding to discovery requests in a case where plaintiffs did not have a viable cause of action.").

Plaintiffs' asserted intent to seek preliminary injunctive relief at some undefined point in the future does not alter this analysis. As the Court noted in *Gutenberg*, even where a motion to dismiss is already *pending*, or even fully briefed, a request for expedited discovery is typically premature as it comes "well in advance of typical discovery," and the potential that a motion to dismiss will be granted obviating the need for the requested discovery is the "most important" factor in the analysis. *Id.* (quoting *Landwehr v. Fed. Deposit Ins. Corp.*, 282 F.R.D. 1, 4 (D.D.C. 2010)). Plaintiffs' motion here is even earlier than in *Gutenberg*—just a day after they filed the Complaint and well before Defendants have even had the opportunity to request dismissal. This is considerably in advance of the timing Plaintiffs sought discovery in *New Mexico*, which the Court found "supports Defendants," and none of the procedural developments noted by the Court in the relevant discussion in its order granting

3

discovery in *New Mexico* have occurred in this case. *New Mexico,* ECF No. 60 at 12. Moreover, unlike in *New Mexico,* Plaintiffs here have not yet even filed a submission articulating their theory of imminent, irreparable harm or the likelihood of success on the merits sufficient for warranting expedited proceedings. Instead, Plaintiffs largely rely in their motion on events regarding agencies not at issue in this case that occurred weeks or more ago. *See* Pls.' Expedited Mot. for Expedited Discovery at 6–8, ECF No. 11 ("Pls'. Mot."). That all strongly cautions against a departure from the ordinary course.

As Defendants will explain in detail in their forthcoming motion to dismiss, the Plaintiffs have not established Article III standing—even under the logic of this Court's ruling in *New Mexico* (with which, of course, the Government disagrees). In granting the *New Mexico* Plaintiffs' request for expedited discovery, the Court focused on allegations of "[u]nlawful data disclosure and loss-of-funding." *New Mexico,* ECF No. 60 at 14. But Plaintiffs here do not even offer that much—or anything close to it. Indeed, Plaintiffs appear to concede that their allegations of injury are insufficient, arguing that they have "no meaningful way . . . to evaluate the impacts of [Defendants' alleged actions] on Plaintiffs Japanese American Citizens League and Sierra Club." Pls'. Mot. at 14.

That concession is well taken: Plaintiffs' Complaint is replete with contingent and speculative statements about potential or conjectured future harm. *See, e.g.*, Compl. ¶ 284, ECF No. 1 (citing "uncertainty" about potential harm alleged "on information and belief"); *id.* ¶ 285 (citing "risk" of harm based on "information and belief"); *id.* ¶¶ 286–288 (alleging "uncertainty"); *id.* ¶¶ 288–90 (alleging that certain members of Plaintiff organization receive certain federal benefits with no allegation that they have lost access to such benefits); *id.* ¶ 292 (alleging potential efforts "if" certain alleged plans of Defendants "come to pass"); *id.* ¶ 294 (alleging certain funding cuts "may" cause changed plans); *id.* ¶ 296 (alleging harms would occur "if" certain events occur); *see also New Mexico*, ECF No. 26, at 6 (denying request for a TRO in a related case because the plaintiffs' alleged harms are exclusively based on contingencies—a series of "attestations that *if* Musk and DOGE" do

something later, that *might* then have downstream effects upon the plaintiffs). Moreover, unlike the *New Mexico* plaintiffs (whose allegations of standing, Defendants have shown, are insufficient for other reasons, *see New Mexico*, ECF No. 58 at 6–16), Plaintiffs' allegations of harm here are hardly concrete. *See, e.g.*, Compl. ¶ 280 (alleging potential "poorer experience" visiting certain historical sites); *id.* ¶ 296 (planned visit to national forest which has allegedly seen cuts to staff "responsible for clean toilets [and] clearing out trash"); *cf. New Mexico* Compl. ¶ 230, ECF No. 2 (alleging potential harm from alleged intent to stop payments to states).

Thus, the Plaintiffs here marshal a theory of standing far more attenuated than even the *New Mexico* plaintiffs. Indeed, if the Plaintiffs have standing here, it is hard to see how similar organizations would not have universal standing to challenge every prospective federal policy that bears even the remotest connection to its mission: If *possible* harm from a *possible* policy is enough, then what holds for DOGE would be so for *any* government agency. But that is, for good reason, not the law. *United States v. Texas*, 599 U.S. 670, 681 (2023) ("If the Court green-lighted this suit, we could anticipate complaints in future years about alleged Executive Branch under-enforcement of any similarly worded laws—whether they be drug laws, gun laws, obstruction of justice laws, or the like. We decline to start the Federal Judiciary down that uncharted path."). To be sure, there is no need for the Court to render a judgment about Plaintiffs' standing to sue now. But because there are substantial doubts as to standing, this Court should not order discovery until it has assured itself of jurisdiction. *See Guttenberg*, 26 F. Supp. 3d at 99; *Sibley v. U.S. Supreme Ct.*, 786 F. Supp. 2d 338, 346 (D.D.C. 2011) ("[I]t is well settled that discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending." (quoting *Institut Pasteur v. Chiron Corp.*, 315 F. Supp. 2d 33, 37 (D.D.C. 2004))); *see also, e.g.*, *Flores v. Jaddou*, Civ. A. No. 1:23-02004-JMC, 2023 WL 7282897, at *2 (D. Md. Nov. 3, 2023) (rejecting proposal to "permit this case to proceed, direct the parties to engage in discovery, and expend resources adjudicating potential discovery disputes and/or

dispositive motions just for the Fourth Circuit to conclude that this Court had no subject matter jurisdiction to decide the merits of the case in the first place.").[2]

Nor are Plaintiffs entitled to early discovery to afford them the opportunity to cure these pleading deficiencies. Because "[t]he burden is on the plaintiff to allege facts sufficient to support standing," the "district court may properly deny requests for discovery" where "the plaintiff does not even on information and belief assert specific facts sufficient to confer standing." *United Presbyterian Church in the USA v. Reagan,* 738 F.2d 1375, 1383 (D.C. Cir. 1984) (Scalia, J.). "That is particularly so where the request is . . . a fishing expedition of the most obvious kind, undertaken in the hope that some cause of action might be uncovered." *Id.* (cleaned up). Plaintiffs' repeated refrain that they seek "information solely in Defendants' possession that is directly relevant to the core claims in this litigation" does not overcome this rule. Pls.' Mot at 17–18. "The Federal Rules of Civil Procedure require Plaintiffs to state a claim upon which relief may be granted without access to information that is in Defendants' sole control," so "a plaintiff's desire to gain more information in order to generate stronger pleadings is not a legitimate basis" to authorize early discovery. *K.A. v. City of New York*, No. 1:16-cv-04936-LTS-KNF, 2021 WL 5889254, at *2 (S.D.N.Y. Dec. 13, 2021).

2. While courts do consider "whether a motion for preliminary injunction is pending" as a factor in whether to permit early discovery, Plaintiffs have not filed a motion for a preliminary injunction. Pls.' Mot. at 10 (quoting *Pinson v. U.S. Dep't of Justice*, Civ. A. No. 18-486 (RC), 2021 WL 3418954, at *4 (D.D.C. Aug. 5, 2021)). Their representation that they *hope* to file a motion for preliminary injunction at some point in the future—perhaps in the event their dragnet turns up something of use—is insufficient to meet their burden to upend the traditional order of litigation and

---

[2] Defendants anticipate making additional arguments demonstrating the deficiency of Plaintiffs' legal theories undergirding the substance of their claims, such as those raised in their motion to dismiss in the related case of *New Mexico v. Musk*, currently pending before this Court. *See* Defs.' Mot. to Dismiss at 17–35, *New Mexico*, ECF No. 58.

put Defendants to the exceptional burden of responding to early, expedited discovery. *Cf. Pinson*, 2021 WL at 3418954, at *4 (noting "the Court does not find Pinson's request [for early discovery] reasonable" because, *inter alia* "[t]here is no motion for preliminary injunction pending on the docket" and denying request). Requiring a plaintiff to have actually filed such a motion before entertaining a request for early discovery is critical, because without Plaintiffs having done so, a court rarely has a sufficient basis to determine that the discovery is "narrowly tailored to reveal information related to the preliminary injunction as opposed to the case as a whole." *Guttenberg*, 26 F. Supp. 3d at 98; *cf. United Presbyterian Church*, 738 F.2d at 1382; *City of New York*, 2021 WL 5889254, at *2.

The majority of Plaintiffs' own cited cases support this requirement. *See, e.g., Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Pompeo*, Civ. A. No. 18-cv-01388 (TSC), 2019 WL 9598404, at *2 (D.D.C. Jan. 30, 2019) (granting motion to expedite discovery where, *inter alia*, "Plaintiffs have filed a motion for preliminary injunction" and the court had already denied Defendants' motion to dismiss); *Garnett v. Zeilinger*, Case No. 17-cv-1757 (CRC), 2017 WL 8944640, at *2 (D.D.C. Dec. 15, 2017) (granting discovery "related to factual issues raised by the[] pending motion for preliminary injunction); *Courthouse News Service v. Harris*, Civ. No. ELH-22-548, 2022 WL 3577255 (D. Md. Aug. 18, 2022) (granting plaintiffs discovery of data relied on by defendants in opposition to pending motion for preliminary injunction that defendants had refused to provide plaintiffs); Order, *AFGE, AFL-CIO v. OPM*, 25-1237 (S.D.N.Y.), ECF No. 57 (granting plaintiffs access to materials defendants were producing in related action in another district while preliminary injunction motion pending).[3]

---

[3] Likewise, *Ogala Sioux Tribe v. Van Hunnik*, 298 F.R.D. 453 (D.S.D. 2014), cited by Plaintiffs, does not support Plaintiffs' request here. In that case, unlike here, the court permitted discovery only after having denied the defendants' motion to dismiss. And although the court permitted defendants to provide plaintiffs a single list identifying certain hearings so that plaintiffs themselves could seek transcripts of those hearings to support their planned motion for preliminary injunction, defendants

Nor does this Court's Order granting discovery in *New Mexico* support Plaintiffs in this regard. There, the plaintiffs had already sought a temporary restraining order, giving the Court at least some outline of the plaintiffs' contentions with respect to their anticipated motion for preliminary injunction and clarifying some of the particular weaknesses in their initial showing. *See New Mexico*, ECF No 60 at 5; *see also New Mexico*, ECF No. 29 (opinion denying plaintiffs' motion for TRO). The same circumstances applied in *AFL-CIO v. Department of Labor*, Civ. No. 25-339 (D.D.C.), on which the Court relied in granting discovery in *New Mexico*. There, Judge Bates authorized plaintiffs to serve limited discovery before the filing of a preliminary injunction motion, but only after denying two motions for temporary restraining order that raised certain specific factual questions. *See AFL-CIO*, ECF Nos. 18, 34, 43.

Because the Court should first determine whether Plaintiffs have presented a viable complaint, and because Plaintiffs have not made the requisite showing of a specific need for particularized information through the filing of a motion for preliminary injunction, the motion should be denied.

## II.  ORDERING DISCOVERY OF THE WHITE HOUSE IS AN EXTRAORDINARY MEASURE.

Plaintiffs' Complaint is trained almost exclusively on the conduct of Elon Musk and USDS. *See* Compl. at i–ii (Table of Contents); *id.* ¶¶ 122–277. But as the Government has explained, Mr. Musk is a Senior Advisor to the President who works in the White House Office. Decl. of Joshua Fisher ¶¶ 2–4, *New Mexico*, ECF 24-1. And USDS is an office within the Executive Office of the President. *See* Establishing and Implementing the President's "Department of Government Efficiency", Exec. Order No. 14,158, § 3(a), 90 Fed. Reg. 8441 (Jan. 20, 2025). As a result, the Plaintiffs seek far reaching

---

appear not to have opposed the request on the ground that plaintiffs had not yet filed their request for preliminary injunction, but only that injunctive relief was not available at all, an argument the court had already rejected.

discovery not only into the inner workings of the Executive Branch, but into the White House itself. In these circumstances, Plaintiffs must meet an even higher burden.

Litigation against the White House is distinct from garden variety litigation. The separation of powers "should inform the conduct of the entire proceeding, including the timing and scope of discovery." *Cheney*, 542 U.S. at 385 (quoting *Clinton v. Jones*, 520 U.S. 681, 707 (1997)). Among other things, what this means is that before a litigant demands materials of the White House, it must "satisfy[y] his burden of showing the propriety of the requests"—*e.g.*, that there is a compelling "need" for such material, that "other avenues" are unavailable to obtain relevant material, and that no alternatives are "available." *Id.* at 388–90; *see e.g.*, *Lardner v. U.S. Dep't of Justice*, Civ. A. No. 03-0180 (JDB), 2005 WL 758267, at *9 (D.D.C. Mar. 31, 2005) ("[A] court must screen a request for presidential documents to ensure that the discovery is essential to the proceedings"). In addition, it is not the Executive who "shall bear the burden" of showing that a discovery request is too broad; there is an effective presumption against such discovery, which falls to a plaintiff to shoulder with particularity. *Cheney*, 542 U.S. at 388. As explained below, Plaintiffs do not come close to shouldering this heavy burden.

## III.    PLAINTIFFS' REQUEST IS OVERBROAD AND BURDENSOME.

Plaintiffs fare no better upon considering the specifics of their requested discovery. For expedited discovery to be warranted, it must at a minimum be "narrowly tailored to reveal information related to the preliminary injunction," *Guttenberg*, 26 F. Supp. 3d at 98, and attempts "to circumvent the normal litigation process" are impermissible. *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 143 (D.D.C. 2005); *see, e.g.*, *Attkisson*, 113 F. Supp. 3d at 163 (explaining that expedited discovery is "inappropriate" to prove ultimate merits of the case, but instead should be narrowly tailored to issue of preliminary relief). The substance of the Plaintiffs' proposed discovery confirms the inference that it is no more than a search for a viable claim.

In their opposition to the request for expedited discovery in *New Mexico*, Defendants described the breadth and burden of the States's request—which this Court narrowed in its ruling. *See New Mexico*, ECF No. 48 at 9–13. Plaintiffs here request <u>all</u> of those materials—shoehorned into a single request for production, *see* ECF No. 11-1 at 8–9 (RFP No.1)—as just the start of their sprawling request.  What follows after that is requested discovery that is so overbroad and burdensome that it would be objectionable even in the context of merits discovery in the ordinary course—let alone expedited discovery that they seek to be provided on a seven-day timeline.

The discovery Plaintiffs request *in addition* to the materials requested by the *New Mexico* plaintiffs is definitionally overbroad. Indeed, all of the limits that the Court found significant in deciding to permit some discovery in *New Mexico* are absent here.

*First*, Plaintiffs make no effort to tailor the scope of their requests to any harms that they have allegedly suffered as a result of any Defendant. Plaintiffs' second request for production appears to be directed at all federal "Agency Heads," without limitation, regardless of whether their respective agencies are mentioned in the Complaint, while Plaintiffs' fifth request for production encompasses "any directives, instructions, and other communications" without limitation as to the source of such communications to *any* "agency personnel" requiring submission of expenses to DOGE personnel. ECF No. 11-1 at 9, 10. And where Plaintiffs do specifically name an agency, they make discovery requests from at least *fifteen* different entities. *See, e.g. id.* at 10 (Interrogatory 1).

That is a problem, because not even Plaintiffs' own complaint sweeps so broadly. *See, e.g.*, *Pederson v. Preston*, 250 F.R.D. 61, 65–66 (D.D.C. 2008) ("Courts need not tolerate fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests." (citation omitted)) (internal citation and quotation marks omitted); *United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 38 (D.D.C. 2012) ("This is the definition of a fishing expedition that violates the limits on discovery required by Rule 26(b)(2)(C).").

To start, several of the agencies bear no relationship to Plaintiffs' alleged harms at all. In the portions of the Complaint where Plaintiffs purport to allege how they have been harmed (Compl. ¶¶ 272–321), Plaintiffs do not even *reference* Defendant Substance Abuse and Mental Health Services Administration and Defendant US. Department of Housing and Urban Development. And the only reference to Defendant Federal Emergency Management Agency is that it "has designated [a certain] area as having high wildfire risk"—an action which Plaintiffs do not suggest caused them harm. *Id.* ¶ 302. The Complaint offers no basis to take discovery of any of these agencies, nor standing to sue them. *Cf., e.g., Garnett*, 2017 WL 8944640, at *2 (permitting discovery regarding accuracy of data put at issue in defendant's opposition to motion for preliminary injunction); *Courthouse News Serv.*, 2022 WL 3577255 (permitting discovery for data relied on by defendants in opposition to plaintiff's motion for preliminary injunction).

The allegations Plaintiffs *do* offer to substantiate their alleged harms fare little better, and are likewise wholly deficient to justify expedited discovery.

Take Plaintiff Union of Concerned Scientists ("UCS"). In the portion of the Complaint purporting to set forth harm to the Plaintiffs, they claim that actions "at NOAA, NSF, NIH, EPA, and USDA . . . have harmed UCS and its members." Compl. ¶ 309. But the Complaint does not identify a single action related to NOAA, NSF, NIH, and USDA in the remaining 12 paragraphs of the section. And the only allegation regarding EPA is that a third party with which one of Plaintiff's members was contracting reported that the EPA was "clamming up" regarding research funding, leading the member's "lab to make the decision not to proceed with contracting" on a project. *Id.* ¶ 316. But this allegation regarding third party decisionmaking does not afford standing to sue Defendants. *See, e.g., Gettman v. Drug Enf't Admin.*, 290 F.3d 430, 435 (D.C. Cir. 2002) ("[S]peculative claims dependent upon the actions of third parties do not create standing."). And just as these vague and attenuated allegations fail to support UCS's standing, they fail to support any basis for discovery

11

as to any of these agencies. And because no *other* Plaintiff references EPA, USDA, NSF, NIH (or any other subsidiary of the Department of Health and Human Services), no discovery is justified as to any of these agencies, either.

Plaintiffs JACL and OCA offer nothing more with respect to the Department of Education. Across nine paragraphs of the Complaint between the two organizations, both allege only that they have members who are themselves in school or have children in school and who face "uncertainty" or are "at risk" from *potential* cuts that *could* affect specific programs.[4] *See* Compl. ¶¶ 284-92. These vague and conclusory allegations are insufficient to justify discovery with respect to the Department of Education.

Plaintiff JACL describes a handful of historic sites "operated by NPS" that its members visit, and contends that three employees in total at two of those sites had their employment terminated. *Id.* ¶ 274; *see id.* ¶ 278. But JACL does not actually contend that those three alleged terminations harmed it or its members; only that it "fears additional staffing cuts." *Id.* As with UCS, such allegations do not support JACL's standing and do not entitle it to expedited discovery, let alone from the entirety of the National Park Service.

Finally, Plaintiff Sierra Club alleges that they *use* lands administered by the National Park Service, US Forest Service, and Bureau of Land Management, as well as (directly or indirectly) weather information provided by NOAA. But when it comes to whether that use has been (or will soon be) impeded, Sierra Club offers only vague and speculative allegations. For example, while Sierra Club alleges that its members have planned trips to various National Park Service lands "that have already

---

[4] The Complaint contains the bare allegation that Defendants' alleged actions with respect to the Department of Education "have already harmed at least one OCA member" without providing any allegations of the circumstances or what that harm is. Compl. ¶ 286. Again, this threadbare allegation is wholly insufficient to afford standing—let alone expedited discovery. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)("'[C]onclusory' allegations in a Complaint are 'not entitled to be assumed true'").

experienced DOGE-caused impacts," *id.* ¶ 295, they do not specify what this means, or how it has concretely affected them. *See id.* ¶ 294 (suggesting "cuts to NPS staffing and funding *may* cause" them to cancel trips (emphasis added)). Instead, all of these alleged harms are about what *could* happen as a result of *possible* cuts in the future. *Id.* ¶ 297 (alleging "concern[]" about "uncertainty" over the future for Sierra Club's Yosemite Conservation Heritage Center). Indeed, all their allegations of harm amount to similar concessions, that certain events are at "risk" of occurring, *id.* ¶¶ 298, 301, making plaintiffs or their members "fear" or be "concerned" or "apprehensive," *id.* ¶¶ 299, 301, that certain results "may," "could," or "would" occur.[5] *Id.* ¶¶ 300–01, 305, 308. These allegations are plainly speculation, insufficient to establish standing—to say nothing of the extraordinary option of expedited discovery

In sum, despite requesting discovery from at least 15 named government agencies, Plaintiffs have been unable to articulate any actual, concrete, or imminent harm they face with respect to any of them. *Cf. Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, (1992) (injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical" to afford standing (citations omitted)). Indeed, Plaintiffs elsewhere seem to admit as much, emphasizing that they need discovery to determine *whether* they have been really harmed (or will be in the future). *See* Pls.' Mot. at 7 (conceding a lack of knowledge of actions Defendants "will target next or what actions they will undertake"). This is not sufficient grounds to permit early, expedited discovery. *See United Presbyterian Church,* 738 F.2d at 1382; *K.A. v. City of New York*, 2021 WL 5889254, at *2. A party cannot file a lawsuit and obtain discovery to figure out what it is about; and it surely cannot pry open the workings

---

[5] Plaintiffs concede that some of these "fear[ed] . . . risks" that "may lead" their members to make different choices already occurred "[b]efore [the] DOGE-directed cuts" of which Plaintiffs complain. *Id.* ¶301. And while they contend that certain operations "were suspended" in one of NOAA's forecasting regions and that Sierra Club has a trip planned to a park in that region in June—three months from now—they don't allege that they are canceling the trip or that any needed information remains or is expected to remain interrupted at the time of that trip. *Id.* ¶ 307.

of the Executive Branch to survey its considered policies, on the hope that it might find something that would give it jurisdictional standing to sue.

*Second*, unlike in *New Mexico*, Plaintiffs do in fact "seek . . . 'emails, text messages, or any other similar electronic communications'"—an omission that the Court in *New Mexico* found "significantly reduces the pool of materials subject to the request." *New Mexico,* ECF No. 60 at 7; *see New Mexico*, ECF No. 45 at 7. Here, Plaintiffs seek multiple categories of "communications," which they explicitly define to be "used in the broadest sense to mean every conceivable manner or means of disclosure, . . . including e-mail, text messages, social media," or other formats. *See* ECF No. 11-1 at 3 (defining "communication"); *id.* at 9–10 (RFP Nos. 3–6). Plaintiffs likewise define "[d]ocument" in their requests "in the broadest possible sense," specifically including "Electronically Stored Information," with its own maximalist definition. *Id.* at 2.

Importantly, this immense expansion of the pool of potential materials does not merely increase the burden in terms of the efforts to search and review materials, it also goes directly to the privilege issues that Defendants raised in their opposition to the *New Mexico* Plaintiffs' request. As Defendants explained there, discovery is permitted only as to *"*any *nonprivileged matter* that is relevant to any party's claim or defense and proportional to the needs of the case[.]"Fed. R. Civ. P. 26(b)(1) (emphasis added); *see also Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. at 34–35 ("KBR should not be allowed to engage in a fishing expedition, requiring the United States to produce vast amounts of potentially sensitive information with little chance of obtaining relevant, admissible evidence."). Because Plaintiffs' requests seek information from the White House, in particular, it is their burden to show that discovery is not only necessary, but proper, and consistent with all applicable privileges. *See Cheney*, 542 U.S. at 388–89; *see id.* at 388 (the Executive Branch should not have to "bear the burden" of invoking privilege to whittle down an otherwise broad request for discovery). And what is plain from Plaintiffs' motion is that they have not even *attempted* to make that showing.

14

Plaintiffs here, as in *New Mexico*, broadly request, in essence, all "planning, implementation, and operational documents" involving DOGE-adjacent initiatives. ECF 11-1, at 9 (RFP 2). But much of that is squarely covered by the presidential communications privilege, which is a "presumptive privilege for [p]residential communications, [and] preserves the President's ability to obtain candid and informed opinions from his advisors and to make decisions confidentially."[6] *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (internal citation omitted). Simply put, a plaintiff cannot demand— especially in the sort of categorical, reaching fashion that Plaintiffs do here—all of the paper prepared by one of the President's Senior Advisors with respect to a given policy initiative (let alone many or all of them). *In re Sealed Case*, 121 F.3d 729, 754 (D.C. Cir. 1997).

Likewise, Plaintiffs' request for information regarding potential "actions [Defendants] will undertake" in the future, Pls.' Mot. at 7, is almost definitionally in the heartland of the deliberative process privilege, which "protects documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *Loving*, 550 F.3d at 38 (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). The "privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front-page news, and its object is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government." *Klamath Water Users*, 532 U.S. at 8–9 (internal citation omitted); *see Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992) ("To fall

---

[6] The presidential communications privilege is not just limited to protecting "communications directly involving and documents actually viewed by the President"; it also protects "documents solicited and received by the President['s] . . . immediate White House advisers [with] . . . broad and significant responsibility for investigating and formulating the advice to be given the President." *Loving*, 550 F.3d at 37 (last two alterations in original; citation omitted). Unlike the deliberative process privilege, it also "covers documents reflecting presidential decisionmaking and deliberations, regardless of whether the documents are predecisional or not, and it covers the documents in their entirety." *Id.* at 37–38.

within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented judgment.").

In granting discovery in *New Mexico*, the Court noted that the States mitigated these concerns because privileged documents "would likely appear in emails, text messages, and other informal communications," *New Mexico*, ECF No. 60 at 10, which Plaintiffs here intentionally include in the "broadest possible sense." ECF No. 11-1 at 3, 9–10; *see also* ECF No. 11-1 at 11–12 (seeking information on activities that occurred "at the direction *or recommendation or with any other involvement in the decisional process by DOGE personnel and/or Mr. Musk.*" (emphasis added)) (Interrogatories 2, 2a–d); *id.* at 13 (seeking information regarding employment-related plans and activities that have or will occur "at the direction *or recommendation or with any other involvement in the decisional process* by DOGE personnel" (emphasis added)) (Interrogatories 7a & 7b).

Plaintiffs' maximalist request for ESI and other electronic communications, by contrast, virtually ensures that the requests will sweep up large volumes of privileged information—something, again, Plaintiffs have made no effort to avoid (and every effort to include).

*Third*, Plaintiffs' have propounded more interrogatories than would be permissible even in full merits discovery under the Federal Rules of Civil Procedure. Pursuant to Rule 33, a party is permitted no more than 25 written interrogatories, including all discrete subparts. But in addition to requesting in their own right all Interrogatories propounded by the N*ew Mexico* plaintiffs, *see* ECF No. 11-1 at 8–9 (RFP No. 1)—which already amount to approximately 22 Interrogatories when all discrete subparts are considered—Plaintiffs then request *at least* 20 additional interrogatories when all subparts are considered (and it seeks those interrogatories against all 19 Defendants). The sheer number of Interrogatories and subparts is sufficient to establish the unreasonableness of Plaintiffs' requests. And the fact that Plaintiffs make this demand without any recognition of the Federal Rules only speaks to the blunderbuss nature of their request.

*Fourth*, although the Court found "that depositions impose a heavier burden than written discovery" and denied the *New Mexico* plaintiffs' request for depositions, the burden of the depositions proposed here are even greater. *New Mexico,* ECF No. 60 at 12.  For example, in addition to the deposition of Mr. Musk, discussed *infra*, Plaintiffs seek broad and burdensome Rule 30(b)(6) depositions of both the Office of Personnel Management and USDS. ECF No. 11 at 13–15.  The request for the USDS representative also contains a topic covering the responsibilities and authority of all "DOGE personnel," i.e. "all persons acting on behalf of, as part of, or pursuant to the authority of DOGE, including the U.S. DOGE Service Temporary Organization and DOGE Teams." *Id.* at 4, 14. The breadth and burdensomeness of both requests are excessive, but particularly the request of the USDS representative, which is directed to an office of the White House and expressly encompasses the "[a]ctivities of Mr. Musk," a Senior White House advisor, and thus "threaten substantial intrusions on the process by which those in closest operational proximity to the President advise the President" and risks intrusion into executive privileges. *Cheney*, 542 U.S. at 381. The Court should not permit any such deposition in this expedited posture, in light of these burdens. *See id.* at 391.

For all these reasons, the overbreadth, burden, and absence of any attempt to specifically tailor Plaintiffs' requests mandate that their motion be denied.

## IV.    PLAINTIFFS' REQUEST TO DEPOSE ELON MUSK SHOULD BE DENIED.

As discussed above, the Court should deny Plaintiffs' expansive request for discovery. But if the Court does order discovery, at a minimum Plaintiffs' request to depose Senior White House Advisor Elon Musk should be rejected.[7] *See* ECF No. 11-1 at 14.

"[A] district court should rarely, if ever, compel the attendance of a high-ranking official in a judicial proceeding." *In re U.S.A.,* 624 F.3d 1368, 1376 (11th Cir. 2010). Instead, as the Supreme Court

---

[7] The Court correctly denied *New Mexico* plaintiffs' requests for depositions, recognizing "that depositions impose a heavier burden than written discovery." *New Mexico,* ECF No. 60 at 12. It bears

and lower courts have recognized, compelling the testimony of high-ranking government officials is justified only in "extraordinary instances." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977); *accord, e.g., Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013); *In re United States*, 624 F.3d at 1376; *Bogan v. City of Bos.*, 489 F.3d 417, 423 (1st Cir. 2007); *Simplex*, 766 F.2d at 586; *In re United States*, 542 F. App'x 944, 948 (Fed. Cir. 2013). That strict limitation on the compelled testimony of high-ranking officials is necessary because such orders raise significant "separation of powers concerns." *In re USA*, 624 F.3d at 1372; *see Arlington Heights*, 429 U.S. at 268 & n.18. As the Supreme Court has emphasized, administrative decisionmaking and judicial processes are "collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other." *United States v. Morgan*, 313 U.S. 409, 422 (1941). "Just as a judge cannot be subjected to such a scrutiny, so the integrity of the administrative process must be equally respected." *Id.* (internal citation omitted).

Accordingly, "there is a presumption against deposing high-ranking government officials" regarding official actions, *Kelley v. FBI*, Civ. A. No. 13-0825 (ABJ), 2015 WL 13648073, at *1 (D.D.C. July 16, 2015) (citing *Peoples v. U.S. Dep't of Agric.*, 427 F.2d 561, 567 (D.C. Cir. 1970)). As an application of that presumption, which is sometimes termed the "apex doctrine," "high ranking government officials are generally not subject to depositions unless they have *some* personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere." *Alexander v. FBI*, 186 F.R.D. 1, 4 (D.D.C. 1998) (collecting cases); *see Lederman*, 731 F.3d at 203 ("We now hold that, to depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition—for example, that the official has unique first-

---

noting, however, that even the *New Mexico* plaintiffs appeared to recognize that seeking a deposition of Mr. Musk would be unreasonable, further underscoring the unreasonableness of Plaintiffs' requests here. *See New Mexico,* ECF No. 51, at 10.

hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means.").

The apex doctrine serves several purposes: "(1) to protect the integrity and independence of the government's decision-making process; . . . (2) to permit high-ranking government officials to perform their official tasks without disruption or diversion; . . . and (3) to limit indiscriminate depositions that would discourage individuals from accepting positions as public servants[.]" *United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021) (internal citations omitted); *see also In re United States (Reno)*, 197 F.3d 310, 313–14 (8th Cir. 1999); *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993); *Morgan*, 313 U.S. at 422. And as a Senior Advisor to the president, the apex doctrine applies to Mr. Musk. *See Newman*, 531 F. Supp. 3d at 190 (holding that apex doctrine applied to Deputy White House Counsel and Deputy Assistant to the President).

In sum, a long line of authority holds that when a party in civil litigation seeks discovery from a senior Executive Branch official, the district court must hold the plaintiff to a heightened standard of necessity and relevance. And at true minimum, that heightened standard can be met only after a plaintiff has *first* exhausted alternative sources of non-privileged discovery and—having done so—*then* demonstrates that the requests are limited to personal knowledge that cannot otherwise be obtained. *See Simplex*, 766 F.2d at 586–87; *see also Lederman*, 731 F.3d at 203; *Alexander*, 186 F.R.D. at 4.

For this reason, Plaintiffs' request for an apex deposition is particularly inappropriate in the context of expedited pre-answer discovery. In this context, just days after the filing of the Complaint, Plaintiffs of course can make no showing that they have thoroughly exhausted other means of discovery before making this extraordinary request, and Plaintiffs offer no basis to take the deposition of such a senior official before all discovery in the ordinary course is completed and a showing is made that *only* that official can provide specific, essential information. Plaintiffs have not even attempted to

make such a showing, nor could they. Indeed, their duplication of discovery topics in requests to the agencies and in Mr. Musk's demanded deposition topics belies any asserted need for a deposition.

For all of these reasons, Plaintiffs' request to depose Mr. Musk should be denied.

## V.    PLAINTIFFS' APA CLAIM FURTHER UNDERMINES THEIR REQUEST FOR EXPEDITED DISCOVERY.

The only claim directed to the agencies is Plaintiffs' Administrative Procedure Act (APA) claim (Count Four).  *See* Compl. ¶¶ 339–42.  Nevertheless, Plaintiffs argue that "[e]xpedited discovery is appropriate in light of the entire record, the posture of the case, and the unusual nature of Defendants Musk and DOGE's actions, notwithstanding Plaintiffs' single Administrative Procedure Act (APA) claim against Agency Defendants." Pls.' Mot. at 19. Although Plaintiffs seemingly acknowledge that discovery is not normally appropriate in APA cases, they urge that *expedited* discovery is warranted here because of a recent decision in *AFL-CIO*, 2025 WL 556325. There, the court ordered expedited discovery where "three of the plaintiffs' five claims were brought under the APA." Pls.' Mot. at 19. Plaintiffs insist that their case is not a typical APA case, and "[t]he same logic [from *AFL-CIO*] applies with greater force here, where the gravamen of Plaintiffs' claims here are the ultra vires, separation of powers, and Appointments Clause claims against Defendants Musk, DOGE, and Gleason . . ." *Id.*

Plaintiffs' contentions miss the point, and their reliance on *AFL-CIO* is misplaced. At the outset, to reiterate, expedited discovery into any of Plaintiffs' claims is unwarranted because their request is not narrowly tailored to a motion for a preliminary injunction, is overbroad in scope, and is premature. Pertinently, although Plaintiffs assert that "the gravamen" of their claims "are the ultra vires, separation of powers, and Appointments Clause claims," *id.,* they nonetheless also seek expedited discovery on their APA claim. *See generally* ECF No. 11-1. But expedited discovery into their APA claim against the agency defendants—15 agencies along with the respective agency heads, *see* Pls.' Mot. at 2 n.1—is particularly unwarranted. That is because APA review of agency action is generally limited to the administrative record. *See* 5 U.S.C. § 706; *Hill Dermaceuticals, Inc. v. FDA*, 709

F.3d 44, 47 (D.C. Cir. 2013) ("[I]t is black-letter administrative law that in an APA case, a reviewing court should have before it neither more nor less information than did the agency when it made its decision." (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984))). Consequently, discovery—much less *expedited* discovery—is not permitted unless a party can demonstrate unusual circumstances justifying departure from this general rule. *See City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010). Here, Plaintiffs fail to assert any exception to that well-established rule for APA review, particularly at this early juncture. Instead, Plaintiffs justify their request by merely proclaiming that "this is not a typical APA case." Pls.' Mot. at 19 (citation omitted). But, in view of the allegations contained in Plaintiffs' Complaint, there is nothing atypical about their APA cause of action. *See generally* Compl. ¶ 339–42. Plaintiffs muse that "discovery in APA cases is appropriate to enable judicial review to become effective," Pls.' Mot. at 21 (citation omitted), but nothing in their complaint suggests that an administrative record in connection to their APA claim in this case would be "so deficient as to preclude effective review." *Hill*, 709 F.3d at 47.

Plaintiffs' reliance on *AFL-CIO* is particularly misplaced. Plaintiffs baldly claim that "the same type of expedited discovery to aid in evaluation of a forthcoming motion for preliminary injunction that was appropriate in *AFL-CIO* is likewise appropriate here." Pls.' Mot. at 20. Specifically, Plaintiffs speculate that "directives, instructions, and other communications between Mr. Musk and DOGE . . . and agencies . . . will provide information relevant to Plaintiffs' claims that Mr. Musk and DOGE are acting beyond the scope of any lawful authority . . ." *Id.* at 20–21. But those assertions again only reveal Plaintiffs' request for expedited discovery to be nothing more than "a fishing expedition of the most obvious kind, undertaken in the hope that some cause of action might be uncovered." *United Presbyterian Church*, 738 F.2d at 1383 (cleaned up). Indeed, where courts disfavor expedited discovery—especially requests that cut to the merits of a plaintiff's case, *Guttenberg*, 26 F. Supp. 3d at 98—Plaintiffs'

failure to elaborate how their request for expedited discovery would be narrowly tailored to their (as yet unfiled) preliminary injunction motion belies their stated purpose.

Moreover, as explained *supra*, any similarities between this case and *AFL-CIO* are superficial. While it is true that the court authorized expedited discovery in *AFL-CIO*, the decision expressly contemplated that such expedited discovery "should be primarily—if not exclusively—written discovery." 2025 WL 556325, at *1. Here, however, Plaintiffs seek not only extensive requests for production and interrogatories but also Rule 30(b)(6) depositions of the U.S. DOGE Service and the Office of Personnel Management, and a deposition of Mr. Musk. *See* ECF No. 11-1 at 13–15. Thus, Plaintiffs plainly "seek relatively broad discovery on issues going to the merits of their case—their discovery requests are not narrowly tailored to reveal information related to the preliminary injunction as opposed to the case as a whole[,]" including "depositions that would go to the heart of this case . . ." *Guttenberg*, 26 F. Supp. 3d at 98.

If Plaintiffs' argument regarding their APA claim demonstrates anything, it demonstrates the weakness of that claim and further supports deferring any discovery until after deciding Defendants' forthcoming motion to dismiss. Specifically, Plaintiffs concede that they "are not challenging 'decisions or policies [that] were made through a formal process or otherwise produced a record like the Court may see in a typical APA case.'" Pls.' Mot. at 20 (quoting *AFL-CIO*, 2025 WL 556325, at *1 (alteration in original). But that concession is an acknowledgement that Plaintiffs cannot establish final agency action as required to state an APA claim, not that they should be excused from the requirement that the administrative record dictates the parameters of judicial review for such a claim. *See* 5 U.S.C. § 704.

## VI.   IF THIS COURT ORDERS EXPEDITED DISCOVERY, SUCH DISCOVERY SHOULD BE WHOLLY LIMITED TO THE DISCOVERY GRANTED TO THE *NEW MEXICO* PLAINTIFFS.

As noted *supra*, Defendants respectfully disagree with the Court's order granting Plaintiffs discovery in *New Mexico* and have sought a petition for a writ of mandamus and an emergency motion for a stay with respect to that Order. As Defendants have demonstrated, however, Plaintiffs' request here not only suffers from all the deficiencies of the *New Mexico* plaintiffs' request, but far more. While Plaintiffs' request should be denied in full, the Court should at most limit any early discovery in this case to the discovery it granted to the Plaintiffs in *New Mexico*, subject to the same limitations set forth in the Court's order granting discovery in that case. *Cf.* Order, *AFGE, AFL-CIO*, ECF No. 57. As Plaintiffs concede, they challenge "roughly the same set of actions" as those challenged in *New Mexico*, and discovery that is sufficient for the plaintiffs in that case should be sufficient for Plaintiffs as well.[8] Pls.' Mot. at 2.

## VII.   IF THIS COURT ORDERS EXPEDITED DISCOVERY, DEFENDANTS REQUEST A STAY OF THAT ORDER.

If the Court orders expedited discovery notwithstanding all of the above, the Government respectfully requests a stay of that order for at least fourteen days, so that it may consider seeking emergency appellate relief.

---

[8] At a minimum, Plaintiffs should be required to demonstrate, with specificity, exactly why any discovery ordered in *New Mexico* is insufficient for their anticipated preliminary injunction motion. *See generally Guttenberg*, 26 F. Supp. 3d at 98 (rejecting request for expedited discovery that was not "narrowly tailored to seek information that would show plaintiffs' entitlement to a preliminary injunction").

**CONCLUSION**

The Court should deny Plaintiffs' motion for expedited discovery.

Dated: March 19, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General, Civil Division

DIANE KELLEHER
Director, Federal Programs Branch

CHRISTOPHER R. HALL
Assistant Branch Director, Federal Programs Branch

JOSHUA E. GARDNER (FL Bar No. 302820)
Special Counsel

*/s/ James J. Wen*
JAMES J. WEN (NY Bar No. 5422126)
CHRISTOPHER M. LYNCH
(D.C. Bar No.1049152)
JACOB S. SILER (DC Bar No. 1003383)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington D.C. 20005
(202) 598-7361
James.J.Wen@usdoj.gov

*Attorneys for Defendants*